(30)

FILED

MAR - 8 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

**FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| In re: | ) | Case No. 09-22866-C-7 |
| | ) | |
| PAUL DEWAYNE RODERICK and | ) | DC No. PD-1 |
| CYNTHIA LEE RODERICK, | ) | |
| | ) | |
| Debtor(s). | ) | |
| _____ | ) | |

Pite, Duncan, LLP, Erin L. Laney, Josephine Salmon, San Diego, California, for movant Wells Fargo Home Mortgage, Inc., as Servicing Agent for Wells Fargo Bank, N.A.

Paul Dewayne Roderick and Cynthia Lee Roderick, Marysville, California, debtors, appearing in propria persona.

KLEIN, Bankruptcy Judge:

Chapter 7 debtors acting in good faith to negotiate a reaffirmation agreement that modifies their mortgage invoke Federal Rule of Bankruptcy Procedure 4004(c)(2) to defer discharge and thereby defer expiration of the automatic stay per 11 U.S.C. § 362(c)(2)(C) until the mortgagee decides whether to allow mortgage modification.  The mortgagee acknowledges it has repeatedly requested, received, and mislaid the same information from the debtors, and after four short-term discharge deferrals, wants more time.  Those deferrals having proven inadequate, the motion is GRANTED and discharge deferred for six more months.

This opinion is published to highlight Rule 4004(c)(2) as a tool in a debtor's toolbox to preserve the automatic stay during mortgage modification negotiations and to call attention to the status of a mortgage modification as a form of reaffirmation that will be unenforceable as a personal liability of debtor unless it is made <u>before</u> the discharge is entered.

Facts

Several months before filing this bankruptcy case, Paul and Cynthia Roderick began mortgage loan modification discussions with their lender, Wells Fargo Bank, N.A.

When they filed their pro se chapter 7 case on February 20, 2009, they scheduled their Marysville, California, residence as worth $189,000, subject to a $231,442 debt to Wells Fargo.

Consistent with their prepetition discussions with Wells Fargo, the Rodericks stated their intention under 11 U.S.C. § 521(a)(2) to reaffirm the Wells Fargo mortgage loan debt.

Wells Fargo promptly requested, and the Rodericks supplied, their written authorization for loan modification discussions to proceed during the bankruptcy case.

Wells Fargo also told the Rodericks not to make payments on their mortgage after February 2009.  The Rodericks complied, but nevertheless set aside $1500 per month against the mortgage.

Despite its awareness that the debtors intended to reaffirm the mortgage debt, and despite having told the debtors to cease making payments, Wells Fargo, acting through its servicing agent Wells Fargo Home Mortgage, Inc., moved for relief from the automatic stay on March 20, 2009, seeking permission to foreclose because the debtors had ceased making payments.  It also sought attorney's fees and costs for making the motion.

The Rodericks opposed the stay relief motion.  They described their discussions with Wells Fargo and stated that they were setting aside $1500 per month even though Wells Fargo had told them to cease making payments.

At the initial hearing on April 21, 2009, counsel for Wells

- 2 -

Fargo did not know the status of loan modification discussions and agreed to continue the stay relief motion to May 26, 2009.

At the May 26 hearing, Wells Fargo requested another continuance because it had not yet decided whether it would agree to a loan modification.

This scene repeated itself three more times, resulting in a chain of continuances to July 28, 2009, then September 8, 2009, then October 27, 2009.

As their scheduled discharge loomed, the Rodericks asked that entry of the discharge be deferred in tandem with the continuances so that they would not lose the benefit of the automatic stay that, pursuant to § 362(c)(2)(C), otherwise would expire with respect to them as of the entry of their discharge. Without objection, entry of discharge was ordered deferred several times on the authority, inter alia, of Rule 4004(c)(2) to dates shortly after the continued stay relief hearings.

At the October 27 hearing, counsel for Wells Fargo asserted that the loan modification process was incomplete, saying the debtors had not supplied a particular item of information.

Mrs. Roderick instantly, and with the indignation that only a pro se litigant can express convincingly, protested that the putatively missing information had been given to Wells Fargo several times.  She brandished a sheaf of papers documenting contacts with Wells Fargo and narrated her odyssey trying to deal with Wells Fargo and its repeated requests for submission of information previously supplied or for new information never before required notwithstanding prior statements that their application was complete.  She noted that Wells Fargo once even

made her start over and submit a new application.

Wells Fargo did not contest Mrs. Roderick's rendition of the facts and requested yet another continuance of its motion for relief from stay.  It could not state when Wells Fargo would make a decision on the loan modification.

This time, the court continued the stay relief motion for six months, as it was apparent that debtors acting in good faith were being burdened by being dragged back to court for repeated short-term continuances when no loan modification decision was in sight.  Nearly one year after it began the process, Wells Fargo was still having difficulty determining whether it had a completed loan modification application upon which it could act.

The court also granted the debtors' Rule 4004(c)(2) motion to defer the discharge to a date certain after the six-month continued date.  This decision memorializes that ruling.

Jurisdiction

Subject-matter jurisdiction is based on 28 U.S.C. § 1334(a). Stay relief is a core proceeding.  28 U.S.C. § 157(b)(2)(G).  The deferral of entry of discharge is likewise a core proceeding.  28 U.S.C. §§ 157(b)(2)(A) & (O).

Discussion

The issues presented implicate the reaffirmation agreement provisions of the Bankruptcy Code and the terms of the discharge injunction.  Taken together, these inform the role for Rule 4004(c)(2) in the context of mortgage modifications.

- 4 -

I

The ability of debtors to request deferral of discharge is a procedural corollary to the provision in Bankruptcy Code § 524(c) that reaffirmations are not enforceable against debtors unless made before the discharge is entered. By statute, no agreement for which the consideration is "in part" based on a dischargeable debt is enforceable if the agreement is made <u>after</u> the granting of a discharge. 11 U.S.C. § 524(c)(1).[1] This necessitates a rule of procedure to defer a discharge in order to facilitate on-going negotiations of reaffirmation agreements.

Without a way to defer discharge, reaffirmation agreements that are actually in debtors' best interests could become impossible. Similarly, creditors are better off having reaffirmed debt obligations that they will be able to enforce after bankruptcy. Thus, Rule 4004(c)(2) authorizes debtors, but only debtors (in light of negotiating imbalances), to ask that their discharges be deferred. Fed. R. Bankr. P. 4004(c)(2).[2]

---

[1]Bankruptcy Code § 524(c)(1) provides:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, <u>in whole or in part</u>, is based on a debt that is dischargeable in a case under this title is enforceable only to the extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if —
(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;

11 U.S.C. § 524(c)(1) (emphasis added).

[2]Rule 4004(c)(2) provides:

(2) Notwithstanding Rule 4004(c)(1), on motion of the debtor, the court may defer the entry of an order granting a

- 5 -

When Rule 4004(c)(2) was promulgated in 1983, the Advisory Committee on Bankruptcy Rules explained that its purpose was to accommodate problems presented by the requirement in Bankruptcy Code § 524(c)(1) that an enforceable reaffirmation agreement must have been made before the discharge:

> The last sentence of subdivision (c) takes cognizance of § 524(c) of the Code which authorizes a debtor to enter into enforceable reaffirmation agreements only prior to entry of the order of discharge.  Immediate entry of that order after expiration of the time fixed for filing complaints objecting to discharge may render it more difficult for a debtor to settle pending litigation to determine the dischargeability of a debt and execute a reaffirmation agreement as part of the settlement.

Fed. R. Bankr. P. 4004(c), advisory committee note.[3]

It is also significant that an incidental consequence of Rule 4004(c)(2) discharge deferral is that the automatic stay, which otherwise expires upon entry of discharge, continues to protect the debtor.  11 U.S.C. § 362(c)(2)(C).[4]

_____

> discharge for 30 days and, on motion within that [period], the court may defer entry of the order to a date certain.

Fed. R. Bankr. P. 4004(c)(2).

[3]Rule 4004(c)(2) was originally the final sentence of a Rule 4004(c) without subdivisions.  Although relocated, the text of the original final sentence has not been changed.

[4]The relevant language of the automatic stay statute is:

> (2) the stay of any other act under subsection (a) of this section [_i.e._, acts against the debtor and the debtor's property] continues until the earliest of —
> (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied;

11 U.S.C. § 362(c)(2)(C).

- 6 -

II

Two fundamental bankruptcy doctrines influence the analysis of the concept that mortgage modifications constitute reaffirmation agreements to the extent they implicate the personal liability of debtors:  first, the discharge terminates the debtor's personal liability except as otherwise provided in the Bankruptcy Code; and, second, liens that attached to property before bankruptcy remain attached to the property after bankruptcy unless they are specifically avoided during the bankruptcy case.

A

A reaffirmation agreement is an agreement between a creditor and debtor, "the consideration for which, in whole or in part, is based on a debt that is dischargeable" in a case under title 11. 11 U.S.C. § 524(c)(1).  In order to be enforceable, a reaffirmation agreement must be "made" before the discharge is entered.  Id.

One must also focus on what is being reaffirmed.  The view is through the prism of the two main facets of the terms of the discharge as prescribed by Bankruptcy Code § 524(a)(1).

First, discharge "voids any judgment" at any time obtained "to the extent that such judgment is a determination of the personal liability of the debtor" with respect to a discharged debt.  11 U.S.C. § 524(a)(1).  Second, discharge "operates as an injunction" against any act to collect, recover, or offset any discharged debt "as a personal liability of the debtor."  11 U.S.C. § 524(a)(2).  Hence, the heart of the discharge is the

- 7 -

"personal liability of the debtor."[5]

Accordingly, a post-discharge transaction in any way connected with prepetition debt is vulnerable to attack as unenforceable as to personal liability.  The problem is that the phrase "consideration for which, ... in part, is based on a debt that is dischargeable" in the definition of a reaffirmation agreement leads to a question of fact, the determination of which is subject to the vagaries of litigation.  11 U.S.C. § 524(c).

Nor can one rely upon traditional structuring strategies to elude reaffirmation status.  Designating a post-discharge transaction as a new loan, refinancing, or novation, will not necessarily eliminate the question whether it nevertheless is an unenforceable reaffirmation agreement as to personal liability.  Estoppel may be difficult to rely upon.  <u>Loan Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)</u>, 328 B.R. 158, 168-76 (9th Cir. BAP 2005).  Ultimately, whether consideration is "in part" based on a dischargeable debt will be a question of fact that could be raised in defense of an action on the debt and, as bankruptcy

---

[5]The terms of the discharge are fixed by statute:

(a) A discharge in a case under this title —
   (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the <u>personal liability of the debtor</u> with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;
   (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a <u>personal liability of the debtor</u>, whether or not discharge of such debt is waived; and
   (3) [community property injunction terms omitted].

11 U.S.C. § 524(a) (emphasis supplied).

- 8 -

courts have jurisdiction to enforce discharges, determined by a bankruptcy judge in a reopened bankruptcy case.  The outcome of any fact-specific inquiry in litigation is inherently uncertain.

Although any debt may be reaffirmed, most reaffirmations involve secured debts.  Since liens ordinarily survive bankruptcy regardless of reaffirmation, the reaffirmation of a secured debt has the main effect of preserving the debtor's personal liability for the debt.  Thus, the most common use of reaffirmations is to prevent "recourse" debt from becoming "nonrecourse" debt.

Negotiations focused on revising the terms of the obligation to be reaffirmed are common.  Indeed, Congress in § 524(c) twice used the phrase "negotiating an agreement under this subsection" in a context connoting its expectation that negotiations will occur.  11 U.S.C. §§ 524(c)(3) & (6).  Such negotiated modifications may include capitalizing or adding missed payments to the end of the loan payment schedule or substantially reducing principal and interest.

Wells Fargo Bank, N.A., as a case in point, systematically agrees to reaffirmations that write down automobile loans to the value of the subject vehicle and reduces the interest rate.[6]

_____

[6]As an illustration, Wells Fargo agrees in reaffirmations to write down automobile loans to the value of the vehicle and reduce interest.  For example, both of the Wells Fargo reaffirmations on this court's January 6, 2010, calendar modified loan terms in favor of debtors.  On one, principal was reduced from $7,585.60 to $3,348.75 and interest was reduced from 15.99% to 8%.  On the other, interest was reduced from 9.25% to 8%.  In re Morfin, Bankr. E.D. Cal. No. 09-40038-C-7; In re Sheridan, Bankr. E.D. Cal. No. 09-37894-C-7.

B

A mortgage modification appears to be a reaffirmation agreement to the extent that it affects a debtor's personal liability. There is no sound basis to distinguish mortgage modifications from other negotiated reaffirmation agreements.

1

Although mortgages take a number of forms in the various states, all involve a personal obligation to pay money backed by some form of charge against, or interest in, real estate to secure payment of the debt. Unless the debt is "nonrecourse" either by contract or by statute so that the creditor may enforce the obligation only against the collateral, the obligor remains personally liable.

In general, two categories of mortgage — the lien of the mortgage in favor of the lienor-mortgagee and the note and deed of trust in which title is conveyed to a trustee for the duration of the life of the obligation — predominate.

Upon completion of the terms of the contractual debt obligation (typically payment), either the mortgagee must release the lien or the trustee under the deed of trust must reconvey title. All such forms of security are within the definition of "lien" under the Bankruptcy Code. 11 U.S.C. § 101(37).[7]

---

[7]The Bankruptcy Code definition of "lien" is:

(37) The term "lien" means charge against or interest in property to secure payment of a debt or performance of an obligation.

- 10 -

The personal liability of the debtor for a mortgage-type debt depends upon the contract and upon nonbankruptcy law.  In an express "nonrecourse" debt scenario, the contract provides that the creditor's sole recourse will be against the collateral.  De facto "nonrecourse" debt results in a functional sense when nonbankruptcy (typically, state law) enforcement mechanisms or prohibitions insulate obligors from personal liability in a manner that operates to render certain categories of mortgage debt into nonrecourse debt, regardless of the contractual terms.

As to the latter category — the functional effect of state law enforcement mechanisms and limitations — myriad variations among the states make it difficult to generalize about whether any particular mortgage-type obligation is or is not nonrecourse debt in a functional sense.

2

California law controls this case.  What matters for present purposes is that, at least as a matter of theory, the debtors in this case could be exposed to personal liability on their residential mortgage.  Hence, reaffirmation is not chimerical.

To be sure, the great majority of mortgages on California owner-occupied residences are, in the functional de facto sense, "nonrecourse" for either of two reasons.  First, California permits the foreclosing creditor to elect a simplified and expedited nonjudicial foreclosure, following which there can be no deficiency judgment.  Cal. Code Civ. Proc. § 580d; 4 B.E.

---

11 U.S.C. § 101(37).

- 11 -

1  WITKIN, SUMMARY OF CALIFORNIA LAW: SECURITY TRANSACTIONS IN REAL PROPERTY

2  § 199 (10th ed. 2005) (hereafter "WITKIN").

3      Nonjudicial foreclosure is normally preferred over the more

4  protracted and expensive judicial procedure for obtaining a

5  judgment of foreclosure and a deficiency judgment premised on

6  personal liability.  Cal. Code Civ. Proc. §§ 725a-730.5; WITKIN

7  §§ 139-43 & 178-81.  The economics of the transaction costs

8  discourage creditors from pursuing judicial foreclosure unless a

9  deep pocket lurks in the background.  Nevertheless, since any

10  California mortgagee can choose between judicial and nonjudicial

11  foreclosure, it is not apodictic that the structure of the

12  foreclosure system perfectly insulates California owner-occupants

13  from personal liability on account of their mortgage debts.

14      Next, California insulates owner-occupants of residences

15  with fewer than four units by prohibiting deficiency judgments in

16  judicial foreclosures with respect to purchase money obligations.

17  Cal. Code Civ. Proc. § 580b.  That protection is also imperfect

18  as the statute limits it to financing "to secure repayment of a

19  loan which was in fact used to pay all or part of the purchase

20  price" of the owner-occupied dwelling.  Id. (emphasis supplied).

21  California courts construe § 580b as narrowly limited to the

22  "standard purchase money transaction."  Compare Roseleaf Corp. v.

23  Chierighino, 59 Cal. 2d 35, 41 (1963) (Traynor, J.), with Brown

24  v. Jensen, 41 Cal. 2d 193, 198 (1953); WITKIN §§ 182-89.

25      Since the refinancings and home equity lines of credit that

26  have been popular in recent years are not necessarily "standard

27  purchase money transactions," the insulation of § 580(b) is

28  spottier than one might otherwise assume.  By refinancing, many

- 12 -

California owner-occupants may have lost their statutory
insulation from deficiency judgments.  See WITKIN §§ 182-83.

Junior mortgages, which are also eligible for mortgage
modification, may also entail personal liability for California
debtors when the lien of the junior mortgage is eliminated as a
consequence of foreclosure by a senior lienor.  The so-called
"sold-out junior" may sue on the debt, particularly if the junior
financing transaction was not part of a standard purchase money
transaction.  Roseleaf Corp., 59 Cal. 2d at 39-40; WITKIN § 205.

In this instance, the subject debt appears to be refinanced
debt.  Thus, the debtors' stated desire to affirm their mortgage
debt to Wells Fargo potentially has legal and practical
significance that dovetails back to the effect of the discharge.


3

The Bankruptcy Code makes no relevant distinction between
debt secured by real property and debt secured by other than real
property.  In the eyes of the bankruptcy discharge, a mortgage
lien is no different than any other lien.

As with liens generally, the lien of a mortgage survives the
discharge as a charge against the subject real property (or
interest in real property) to secure a debt, unless there is an
order specifically altering or eliminating the lien.  The
debtor's personal liability on the debt, however, terminates upon
the entry of the discharge unless there is an enforceable
reaffirmation agreement.  If there is not an enforceable
reaffirmation, then only the lien may be enforced after entry of
the discharge, which lien the creditor can agree to release for

- 13 -

less than (but probably not more than) the amount of the debt.

Therein lies the relevance of the reaffirmation agreement provision of Bankruptcy Code § 524(c) to mortgage modification in relation to the timing of the discharge. A mortgage modified before the discharge preserves the personal liability of the debtor. A mortgage modified after the discharge is entered can only modify the terms under which the lien will be released.

4

The conclusion that mortgage modifications are reaffirmations for purposes of assessing post-discharge personal liability is not undermined by the provision in Bankruptcy Code § 524(c)(6)(B) that the court is not required to approve a reaffirmation of consumer debt secured by real property as being in the debtor's best interest and as not imposing an undue hardship, which otherwise is required whenever the debtor was not represented by counsel during the negotiation of the reaffirmation agreement. 11 U.S.C. § 524(c)(6)(B). That provision applies only to the sixth essential element of an enforceable reaffirmation and, in particular, does not excuse compliance with the first essential element that the agreement be "made" before the discharge.

The text of § 524(c), as set out in the margin, specifies five essential elements for an enforceable reaffirmation agreement that always apply and a sixth that applies only when the debtor was not represented by counsel in connection with

- 14 -

reaffirming, except for consumer debt secured by real property.[8]

---

[8]Bankruptcy Code § 524(c) provides:

(c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if —
(1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;
(2) the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement;
(3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that
(A) such agreement represents a fully informed and voluntary agreement by the debtor;
(B) such agreement does not impose an undue hardship on the debtor or a dependant of the debtor; and
(C) the attorney fully advised the debtor of the legal effect and consequences of —
(i) an agreement of the kind specified in this subsection; and
(ii) any default under such an agreement;
(4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;
(5) the provisions of subsection (d) of this section have been complied with; and
(6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as —
(i) not imposing an undue hardship on the debtor or a dependant of the debtor; and
(ii) in the best interest of the debtor.
(B) Subsection (A) shall not apply to the extent that such debt is a consumer debt secured by real property.

11 U.S.C. § 524(c).

- 15 -

Under the plain language of the statute, the provision of § 524(c)(6)(B) that excuses compliance with § 524(c)(6)(A) does not excuse compliance with the other five essential elements of an enforceable reaffirmation agreement.

Moreover, the 2005 Amendments to the Bankruptcy Code gave the court additional power to disapprove a reaffirmation agreement (except on debt to credit unions), if the debtor's surplus income over expenses is not sufficient to make scheduled payments on the reaffirmed debt. 11 U.S.C. § 524(m). Nothing suggests that § 524(m) does not also apply to mortgages.

Since nothing in § 524(c) suggests that a reaffirmation agreement made after entry of a discharge is enforceable against the debtor as a personal liability if the requirement of § 524(c)(1) is not satisfied, it follows that the rules of procedure designed to facilitate the negotiation of reaffirmation agreements apply to mortgage modification situations.


                                III

This brings the analysis back to the details of Rule 4004(c)(2):

> Notwithstanding Rule 4004(c)(1), on motion of the debtor, the court may defer the entry of an order granting a discharge for 30 days and, on motion within that [period], the court may defer entry of the order to a date certain.

Fed. R. Bankr. P. 4004(b)(2).

Rule 4004(c)(2) limits the sweep of the affirmative command of Rule 4004(c)(1) that the court shall "forthwith" grant the discharge upon completion of the basic prerequisites for discharge. If the discharge is deferred, then, as noted above,

- 16 -

there is the incidental consequence of extending the duration of the debtor's enjoyment of the protection of the automatic stay. 11 U.S.C. § 362(c)(2)(C).

A

One technical problem in Rule 4004(c)(2) merits discussion. A word essential to making sense of the rule is omitted.  No confusion results, however, as the context of the rule is such that the omitted word can only be the word "period."

Specifically, the text of Rule 4004(c)(2), promulgated in 1983 as the last sentence of Rule 4004(c), omits the word "period" from the following:  "defer the entry of an order granting a discharge for 30 days and, on motion within that [period], the court may ..."  Fed. R. Bankr. P. 4004(c)(2).  The word "period" needs to be inserted because the phrase "on motion within that, the court may" is nonsense.

From context, the omitted word can only be the antecedent to which "within that" points.  As the drafting conventions of the rules prefer "period" over "time," the omitted word must be "period."  This solution to the omission is so far beyond doubt that the Collier treatise and Collier publication of the text of the rules go so far as to insert the missing word "period" as if the rule had been corrected.

Nor does there appear to have been a reported controversy regarding the omission.

To the extent a judicial ruling is needed to fill in the gap, this court now holds that the missing word after "within that" in Rule 4004(c)(2) is "period."  Thus, Rule 4004(c)(2)

- 17 -

permits the debtor to make a motion to defer entry of discharge
for 30 days and, on motion within that period, the court may
defer discharge to a date certain.


                                    B

     Timing and mechanics are considerations.  Rule 4004(c)(2)
contemplates an initial 30-day deferral of discharge that may be
further extended to a date certain on motion nominally to be made
"within the 30 day period" of the initial deferral.


                                    1

     The first mechanical question is whether the rule creates a
straightjacket in which no initial order may defer a discharge
for more or less than 30 days, even if it is known that several
months will be needed to resolve the matter.

     If it is known at the outset that more than a 30-day
deferral will be needed, then it would be an excessive formalism
to require two motions under Rule 4004(c)(2) and would be
inconsistent with the obligation to construe the rules to secure
just, speedy, and inexpensive determination of every case and
proceeding.  Fed. R. Bankr. P. 1001.  It follows that a court has
discretion in an initial motion for deferral to leapfrog the
initial 30-day extension and defer discharge to a date certain.


                                    2

     The second mechanical question is whether Rule 4004(c)(2)
permits the fourth extension that is now being ordered.  In other
words, may there may be multiple successive extensions to a date

                               - 18 -

certain?  The pertinent language of Rule 4004(c)(2) is:  "on
motion within that [period], the court may defer entry of the
order to a date certain."  Fed. R. Bankr. P. 4004(c)(2).
Although the sense of the language is singular, conventional
statutory analysis answers the question in the affirmative as
permitting multiple successive extensions.

   The rules of construction prescribed by Bankruptcy Code
§ 102 are expressly incorporated into the rules by Rule 9001.
Fed. R. Bankr. P. 9001 ("the rules of construction in § 102 of
the Code·govern their use in these rules").  Bankruptcy Code
§ 102(7) provides that "the singular includes the plural."  11
U.S.C. § 102(7).  Accordingly, multiple successive extensions to
dates certain are permitted by Rule 4004(c)(2).  Hence, the
subsequent extension in this instance is authorized by the rule.


                              3

   An additional question is whether a motion for deferral to a
date certain, which Rule 4004(c)(2) says is obtained "by motion
made within that [period]," actually must be made before the
prior deferral period has expired.  The "motion-made-within-that-
period" deadline in Rule 4004(c)(2) turns out to be not so rigid
as first meets the eye once it is recognized that the time may be
retroactively enlarged under Rule 9006(b)(1) upon a showing of
excusable neglect.  Fed. R. Bankr. P. 9006(b)(1).

   Rule 9006(b) permits the time for any act "required or
allowed to be done at or within a specified period by these
rules" to be enlarged unless Rules 9006(b)(2) or (3) either
prohibit or limit enlargement.  Fed. R. Bankr. P. 9006(b)(1).

An enlargement under Rule 9006(b)(1) may be retroactive upon a showing of "excusable neglect."  Fed. R. Bankr. P. 9006(b)(1); <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380, 388-95 (1993).

Retroactive enlargements for making Rule 4004(c)(2) motions are permitted because, notwithstanding the rule's apparent internal time limit, Rule 4004(c)(2) is not designated in Rules 9006(b)(2) or (3) as a rule for which enlargements are either not permitted or are limited.  Fed. R. Bankr. P. 9006(b)(2) (no enlargements) & 9006(b)(3) (enlargements limited).  Where internal time limits in various rules are inflexible, Rule 9006 is specific about enforcing them.  <u>Pioneer Inv. Servs. Co.</u>, 507 at U.S. 389 n.4.  Since Rule 4004(c)(2) is not named in either Rule 9006(b)(2) or (b)(3), it follows that enlargement is permitted and may be retroactive upon a showing of excusable neglect.  <u>Id.</u>; Fed. R. Bankr. P. 9006(b)(1).

As the initial deferral motion does not have a designated deadline, the first Rule 4004(c)(2) motion is timely if it is made before the discharge is entered.

C

Although no reported decision appears to have considered the effect of Rule 9006 on the question of retroactive enlargement before a discharge is actually entered, decisions construing Rule 4004(c)(2) reveal important features about the landscape.

- 20 -

1

Bankruptcy courts have divided on the question whether the discharge can or should be vacated so that an otherwise unenforceable, post-discharge reaffirmation agreement can become enforceable.  Compare, e.g., In re Edwards, 236 B.R. 124, 126-27 (Bankr. D.N.H. 1999) (permissible to vacate discharge), with, e.g., Rigal v. Fleet Mortgage Corp. (In re Rigal), 254 B.R. 145, 148 (Bankr. S.D. Tex. 2000) (impermissible to vacate discharge).

The debate heretofore has touched on Federal Rule of Civil Procedure 60(b), as incorporated by Rule 9024, and has not focused on the role of retroactive enlargements upon a showing of excusable neglect.  Fed. R. Civ. P. 60(b), incorporated by Fed. R. Bankr. P. 9024; & Fed. R. Bankr. P. 9006(b).  As no discharge has been entered in this case, the issue is left to another day.

2

The teaching of the second group of cases is that caution is needed when a court acts so as to increase the "gap" between the deadline to object to discharge and the entry of discharge.

The puzzle is how one goes about challenging a discharge when the crucial facts warranting denial or revocation of discharge are discovered during the interval between the deadline to object to discharge fixed by Rule 4004(b), which time is not subject to retroactive extension, and the actual entry of discharge that can then be revoked for fraud not known "until after" the granting of such discharge.  Compare Fed. R. Bankr. P. 4004(b) & 9006(b)(3) (no retroactive extension), with 11 U.S.C. §§ 727(d), 1228(d), & 1328(e); Morse v. Perotta (In re Perotta),

406 B.R. 1, 10-13 (Bankr. D.N.H. 2009) (collecting cases).

This "gap" conundrum reflects an imperfect coordination between the rules and the statute that has existed since 1983 whenever the entry of the order of discharge is not instantaneous upon expiration of the deadline to object to discharge.  The gap would be adjustable if Rule 4004(b) had a procedure for extending the deadline to object to discharge less rigid than an insistence that the motion be filed before the deadline has expired.  Fed. R. Bankr. P. 4004(b).

The "gap" problem is not unique to Rule 4004(c)(2) and has gradually been expanding since 1983 in proportion to the erection of various barriers to entry of discharge.  In addition to Rule 4004(c)(2), discharge is also deferred in a manner that does not affect the deadline for objecting to discharge for eight other reasons set forth in the margin.[9]

---

[9]In addition to Rule 4004(c)(2), discharge is deferred:

- for so long as there is pending a motion to dismiss the case under § 707, Fed. R. Bankr. P. 4004(c)(1)(D);
- for so long as there is pending a motion to extend the time for filing a motion to dismiss the case under Rule 1017(e), Fed. R. Bankr. P. 4004(c)(1)(F);
- until the debtor pays the case filing fee, Fed. R. Bankr. P. 4004(c)(1)(G);
- until the debtor files a statement of completion of a course in personal financial management, Fed. R. Bankr. P. 4004(c)(1)(H);
- while a motion is pending to defer or postpone discharge per § 727(a)(12), Fed. R. Bankr. P. 4004(c)(1)(I);
- so long as there exists a presumption that a reaffirmation agreement is an undue hardship under § 524(m), Fed. R. Bankr. P. 4004(c)(1)(J);
- while there is pending a motion to delay discharge on the basis the debtor has not filed all tax documents required by § 521(f), Fed. R. Bankr. P. 4004(c)(1)(K); or
- until 30 days after a debtor is required to file a statement under Rule 1007(b)(8) has filed the statement,

Courts are divided on how to deal with the gap when a basis to challenge the discharge is discovered after the Rule 4004(b) deadline for objecting to discharge and before the entry of discharge that starts the time in which to seek to have the discharge revoked.  Literalists would give debtors a free pass that enables them to retain discharges obtained by fraud.  _E.g._, _Zedan v. Habash (In re Habash)_, 529 F.3d 398, 405-06 (7th Cir. 2008) (dictum).  Courts that apply a more flexible approach so as to thwart illegitimate discharges reason that the rules of procedure must give way to the statute.  _E.g._, _Citibank v. Emery (In re Emery)_, 132 F.3d 892, 895-96 (2d Cir. 1998); _Ross v. Mitchell (In re Dietz)_, 914 F.2d 161, 164 (9th Cir. 1990).  A third approach builds on Bankruptcy Code § 105 and the Supreme Court's decision in _Marrama v. Citizens Bank_, 549 U.S. 365 (2007), to permit objections to discharge to be filed after the Rule 4004(b) deadline but before the discharge is entered, reasoning that abuse of process otherwise would result. _Perrotta_, 406 B.R. at 16-17.

The "gap" will be manageable in this instance because the law of the Ninth Circuit gives a bankruptcy court discretion, in the name of complying with the spirit of the Federal Rules of Bankruptcy Procedure, to indulge in the legal fiction of "deeming" a discharge to have been entered immediately upon expiration of the Rule 4004(b) deadline in which to object to discharge even though it actually is deferred.  _Sherman v. SEC (In re Sherman)_, 491 F.3d 948, 966-67 (9th Cir. 2007), _explaining_

---

Fed. R. Bankr. P. 4004(c)(3).

- 23 -

<u>Dietz</u>, 914 F.2d at 164.  Thus, if a dysfunction arises because of the "gap" that is being extended, this court has discretionary tools to deal with the situation.


                                IV

     Having concluded that Rule 4004(c)(2) is eligible to be employed during the pendency of loan modification negotiations, the question becomes whether it is appropriate to do so in this instance and to do so for a substantial period of time.


                                A

     The threshold prerequisite to an exercise of discretion to defer discharge under Rule 4004(c)(2) is that the debtors must be acting in good faith.

     As noted at the outset, the court is persuaded that these debtors are acting in good faith.  They say they are setting aside funds to pay the mortgage.  The $42,000 difference between the amount of the debt and the presumed value of the residence suggests that an agreed mortgage modification is a realistic expectation.  Nothing in the record suggests that they are enjoying a free ride during the pendency of the automatic stay.


                                B

     The Wells Fargo position is typical of what the court has been hearing in other cases with regularity.  Institutional mortgage lenders have been coming before this court seeking relief from the automatic stay to foreclose on a chapter 7 debtor's home on grounds there is no equity in the property

                              - 24 -

despite on-going modification negotiations and that payments are
in arrears, even though the mortgage creditor may have counseled
the debtors to stop making payments.  These lenders often
acknowledge, as here, that the debtor's sometimes-multiple
requests for consensual modification of the mortgage have been
"lost" or "mislaid."  If not "lost," they say, as here, that
action will be "delayed" for many months because they are busy.

The utility of deferring discharge pursuant to Rule
4004(c)(2) is to preserve the status quo during the period it
takes for the creditor to equilibrate the asymmetry between its
urgent stay relief motion filed at the outset of the case and the
same creditor's seemingly lackadaisical approach to considering
whether to agree to modify the mortgage.

There is, of course, every reason to expect Wells Fargo will
negotiate in good faith consistent with the requirement of
California law that every contract is subject to an implied
covenant, or duty, of good faith and fair dealing.  <u>E.g.</u>, <u>Waller</u>
<u>v. Truck Ins. Exch., Inc.</u>, 11 Cal.4th 1, 35-36 (1995).

As Wells Fargo requests that its long-continued stay relief
motion be further continued and agrees that a further deferral of
discharge under Rule 4004(c)(2) is also appropriate, it is not
necessary to decide whether its motion should be denied on the
basis of inequitable conduct in the filing of an unnecessary
stay[10] relief motion and lack of clean hands when filing a motion

---

[10]There is no merit to the common assertion by mortgage
creditors that stay relief is needed before negotiating with
debtors.  The conspicuous absence in thirty years of Bankruptcy
Code jurisprudence of reported decisions taking creditors to task
for participating in voluntary reaffirmation discussions

premised on nonpayment promptly after telling the debtors to
suspend payment.  Rather, the only remaining question is for how
long to continue the stay relief motion and to defer discharge.

The appropriate period for further deferral is that which
will facilitate efforts between the debtors and Wells Fargo to
reach a consensual and mutually beneficial resolution.  Such a
result, if it can be achieved, would give effect to the
fundamental bankruptcy policy of a fresh start for these debtors
and of payment on satisfactory terms to the creditor.  If the
parties are ultimately not successful, the usual bankruptcy and
state law remedies will thereafter be available to the parties.

C

The Rule 4004(c)(2) discharge deferral has limits.  It
cannot be used to run roughshod over security interests
generally.  Nor can it be used as a device for indefinite delay
of the inevitable.  Neither circumstance would comport with the
requirement that Rule 4004(c)(2) be invoked in good faith.

Moreover, discharge deferral as a strategy for dealing with
creditors is vulnerable to the criticism that chapter 7
liquidation is not designed as a long-term procedure for

_____

demonstrates the lack of merit in such a position.  Stay relief
motions made on that pretext are vulnerable to fee shifting in
favor of the debtor following compliance with the safe-harbor
provisions of Rule 9011.  Fed. R. Bankr. P. 9011(c)(1)(A).  Nor
is the phenomenon of unnecessary stay relief motions harmless —
mortgage creditors often file in this court stay relief motions
in no-asset chapter 7 cases in which the stay likely will expire
soon after the motion can be heard and then add about $1500 to
the debt for the cost of the motion; this smacks of an
illegitimate private bankruptcy penalty.

adjusting creditors' rights.  That task ordinarily is left to plans under chapters 11 and 13.

But the case of mortgages on individual debtors' principal residences is different.  Chapters 11 and 13 are inadequate for dealing with mortgages on principal residences because such obligations may not be modified by a chapter 11 or 13 plan.  11 U.S.C. §§ 1123(b)(5) & 1322(b)(2).  In contrast, chapters 11 and 13 are adequate to restructure any other mortgage.

Especially in a state that, like California, has a rapid nonjudicial foreclosure procedure that bypasses the local courts, a debtor is left with little process-based leverage other than the automatic stay and the ability to attempt to negotiate a consensual reaffirmation.

As already explained, reaffirmations have long served to provide a method for adjusting creditor rights by consent, especially in chapter 7 cases.  Moreover, it is common for reaffirmations to reduce principal and interest or otherwise to adjust payment terms.  By enabling the automatic stay to remain in effect by way of deferring discharge under Rule 4004(c)(2) for debtors acting in good faith to negotiate reaffirmations, debtors at least have some leverage to deal with a creditor.

The duration of the exercise of that leverage depends upon the state of the negotiations.  When, as with mortgage modifications, a creditor holds itself out as willing to negotiate, the appropriate period for discharge deferral is for the duration of the negotiation process.  Once there is no prospect of further negotiation, it would no longer be appropriate to continue to defer discharge.

- 27 -

It may also be appropriate to tailor the continuing stay to fit the need to deal only with some of the creditors and not others. The court has the ability to fit the continuing stay to the circumstances by vacating the automatic stay with respect to creditors who are not involved in reaffirmation discussions and can do so sua sponte without burdening other creditors with the need to make motions for relief from stay.

The ultimate limitation in the use of Rule 4004(c)(2) lies within the discretion of the court. Once a creditor finally and unequivocally rejects modification, it would be difficult to justify further discharge deferral. If the court loses confidence in a debtor's good faith or ability to accomplish a successful modification, it likewise would become difficult to justify further discharge deferral.

D

In this instance, the initial discharge deferrals were in short increments in reliance on representations of Wells Fargo that it would soon be making a decision. It is now conceded that short increments will not suffice. In view of the inadequacy of the prior short-term deferrals, this deferral will be for six months and may yet again need to be renewed until Wells Fargo, acting in compliance with its California covenant of good faith and fair dealing, makes a definitive and final determination whether to permit modification of the subject mortgage.

***

Federal Rule of Bankruptcy Procedure 4004(c)(2) permits debtors acting in good faith to request discharge deferral while attempting to renegotiate mortgages in which they would reaffirm their personal liability.  Multiple extensions may be warranted when, as here, the creditor is proceeding at a glacial pace.

An appropriate order will issue.

Dated:    March 8, 2010.

_____
UNITED STATES BANKRUPTCY JUDGE

1

**CERTIFICATE OF SERVICE**

2

3          On the date indicated below, I served a true and correct
copy(ies) of the attached document by placing said copy(ies) in a
postage paid envelope addressed to the person(s) hereinafter
4  listed and by depositing said envelope in the United States mail
or by placing said copy(ies) into an interoffice delivery
5  receptacle located in the Clerk's Office.

6  Pite Duncan, LLP
Erin L. Laney
7  P.O. Box 17933
San Diego, CA 92177-0933

8

Paul Dewayne Roderick
9  Cynthia Lee Roderick
1122 Maple St.
10  Marysville, CA 95901

11

Dated:  *3-9-10*

12

13                                        *Wendy Locke*

14                                  ─────────────────────
DEPUTY CLERK

15

16

17

18

19

20

21

22

23

24

25

26

27

28